**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ACCELEPRISE ACCELERATOR FUND III, L.P., a Delaware Limited Partnership,<br><br>                                      *Plaintiff*,<br><br>v.<br><br>ALETHEA TECH PTE LTD, a Singapore Private Limited Company,<br><br>                                      *Defendant*. | Case No. 1:25-cv-02066 |

## DECLARATION OF DOUGLAS S. CURRAN

I, DOUGLAS S. CURRAN, declare as follows:

      1.      I am a partner at Anderson Kill, P.C. and an attorney admitted to practice before this Court. I represent Plaintiff Acceleprise Accelerator Fund III, L.P. ("Acceleprise") in the above-captioned action. I submit this declaration in support of Acceleprise's Motion to Remand and for Reimbursement of Reasonable Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c). I have personal knowledge of the facts stated herein and if called to testify, I would testify competently thereto.

      2.      On August 23, 2024, Acceleprise filed a complaint against Defendant Alethea Tech Pte Ltd ("Alethea") in the Supreme Court for the State of New York, New York County, captioned *Acceleprise Accelerator Fund III v. Alethea Tech PTE Ltd,* Index No. 654374/2024 ("Complaint") (ECF Doc. 1-1). Acceleprise filed that Complaint in New York State court rather than in this Court because complete diversity does not exist between the parties.

      3.      Undersigned counsel has been in email and telephone contact with Alethea's counsel, Mr. Barry Cohen, since October 10, 2024. On that date, Mr. Cohen emailed me to ask if service of the New York state court lawsuit had been completed. I responded that it had not

been, and I asked him if Alethea would be willing to waive service in exchange for extended time to answer the Complaint. I also informed him that Acceleprise had been attempting unsuccessfully to serve Alethea's corporate representatives in the U.S. Mr. Cohen informed me by reply email on October 18, 2024 that Alethea would not waive service.

4. I also sent Mr. Cohen an email on December 30, 2024. Acceleprise had filed a motion in the New York Supreme Court for an extension of time to serve the Complaint and summons, given that Acceleprise was required to formally effectuate service through the Hague Service Convention. I served the Order to Show Cause papers on Mr. Cohen by email on that date.

5. Mr. Cohen responded on January 7, 2025, stating that Alethea did not intend to oppose the service extension that Acceleprise had requested.

6. Service was completed by the Singapore Central Authority under the Hague Service Convention on February 14, 2025.

7. On March 12, 2025, Alethea purported to remove this case from New York State Supreme Court, New York County, to this Court. (*See* Notice of Removal, ECF Doc. 1.)

8. Alethea did not inform Acceleprise or its counsel that it intended to remove the case prior to filing its Notice of Removal, nor did Alethea or its counsel seek any information from Acceleprise regarding the citizenship of Acceleprise's partners prior to removing.

9. On March 13, 2025, the day after Alethea's removal of the action, I called Mr. Cohen and informed him that the removal was improper, as one of Acceleprise's limited partners was a Canadian citizen. I requested that Alethea withdraw the notice of removal because there was not complete diversity among the parties. I memorialized that phone call with an email, stating, "To confirm, one of the limited partners of the plaintiff Acceleprise Accelerator Fund III,

LP is a Canadian citizen, such that there is not complete diversity between the parties under 1332. We'd prefer not to litigate the issue and that Alethea instead voluntarily request that SDNY remand the case to NY Supreme." A true and correct copy of this email chain is attached hereto as **Exhibit A**.

10. On March 17, 2025, Mr. Cohen sent me an email requesting that I send "proof or evidence related to Acceleprise having a partner/member who is a Canadian citizen." A true and correct copy of that email chain, with emails dated March 17 to March 19, 2025, is attached hereto as **Exhibit B**.

11. On March 19, 2025, I emailed Mr. Cohen and attached a partially redacted spreadsheet provided from Acceleprise's business records listing Acceleprise's partners and their respective addresses. That document identified one of the limited partners as a Canadian citizen residing in Canada. (*See* Exhibit B at PDF p. 1 & 3.)

12. Shortly thereafter, I received a phone call from Mr. Cohen. During the call, Mr. Cohen requested that I provide additional information, including potentially a sworn statement reciting the key jurisdictional and citizenship information that was reflected in the above-referenced spreadsheet.

13. On March 25, 2025, I emailed Mr. Cohen and attached a sworn statement from the General Counsel of Forum Ventures, LLC, which at the time was the manager of Acceleprise.[1] A true and correct copy of that email with the attached declaration is attached hereto as **Exhibit C**.

14. The General Counsel's declaration read in pertinent part:

---

[1] Forum Ventures, LLC continues to be an affiliate of Acceleprise, but the management structure changed for business reasons in April 2025. Acceleprise's current manager is Forum Ventures Management, LLC.

> 2. Acceleprise is a limited partnership formed under the laws of Delaware. It has one general partner and several limited partners.
>
> 3. One of those limited partners is an individual who is a Canadian citizen. That individual resides in British Columbia, Canada.

(*Id.* at PDF p. 2.)

15. Despite this plain and clear sworn statement demonstrating that complete diversity does not exist, on March 28, 2025, Mr. Cohen replied and stated that the sworn statement Acceleprise provided did not address all of his purported concerns. In particular, Mr. Cohen requested additional "proof or sufficient acknowledgement" concerning the limited partner's status as a Canadian citizen and partner of Acceleprise. A true and correct copy of that email chain is attached hereto as **Exhibit D**, with Mr. Cohen's email at page 3.

16. In that email, Mr. Cohen specifically requested three additional pieces of information, none of which was either necessary or lacking from the prior disclosures.

17. First, Mr. Cohen asked for "proof" that the LP in question "[w]as an existing LP and a Canadian citizen at the time the Complaint was filed." (*Id.*) But this demand sought unnecessary information, because if diversity does not exist at the time of removal, the case must be remanded regardless of whether diversity existed at the time the lawsuit was filed. *See Liu v. Chang*, 2024 WL 5135738, at *2 (S.D.N.Y. Dec. 17, 2024) (ruling a case is not removable unless complete diversity existed at both the time of removal and the time the complaint was filed in state court); *Vasura v. Acands*, 84 F. Supp. 2d 531, 535 (S.D.N.Y. 2000) ("If the record in the present case does not reflect diversity at both stages, removal was improper and the case must be remanded."). But, in all events, the business-record spreadsheet that Acceleprise initially provided to Alethea states on its face that it was accurate "as of" August 23, 2024—i.e., the day the complaint was filed in New York state court.

18.     Second, Mr. Cohen asked for "proof" that "[s]uch Canadian LP remains at present an LP." (*Id.*)  This fact is expressly stated by the declaration that Acceleprise provided.  As noted above, that declaration states, "One of those limited partners **is** an individual who **is** a Canadian citizen."  (Ex. C at 3 (emphasis added).)  The use of present tense verbs confirms that the partner in question "remains at present an LP."

19.     Third, Mr. Cohen asked for "proof" "[s]pecifically that such Canadian LP was and remains an LP of Fund III."  This fact, too, is expressly stated by the declaration that Acceleprise provided.  That declaration defines "Acceleprise" to mean "Acceleprise Accelerator Fund III, L.P.," which is the "Fund III" that Mr. Cohen referred to.  It then stated, as noted above, that "one of" Acceleprises's limited partners is a Canadian citizen.  (*Id.*)  There is nothing further that Alethea needed to determine that its Notice of Removal was not proper.

20.     On that same day, March 28, 2025, I responded by email addressing each of Mr. Cohen's points, and I reiterated my request for Alethea to voluntarily remand the case back to state court given the parties' lack of complete diversity of citizenship. (*See id.* at 2.)  I also stated, "We provided you the courtesy of informing you of the error and allowing Alethea an opportunity to correct it. We have now had multiple calls, exchanged multiple emails, and sent you a sworn declaration regarding the foreign LP that destroys diversity."  I further stated that Alethea "filed an improper removal without doing the barest investigation as to whether full diversity existed, as the federal rules require." (*Id.*)

21.     I then provided a further attorney representation that diversity did not exist.  I stated, "Nevertheless, as counsel of record, I can again confirm, this time in writing, that the foreign LP in question was an LP at the time we filed the complaint, at the time your client

wrongly removed, and still today. As I told you on the phone, that is the reason we filed in NY Supreme rather than in SDNY, which does not have subject matter jurisdiction." (*Id.*)

22. Mr. Cohen then called to inform me that he would confer with his client to confirm whether Alethea would voluntarily remand the case. (*See id*. at 1.) During the call, among other things, Mr. Cohen indicated that Alethea was not obligated either to perform a factual investigation prior to filing the removal, or to confirm with Acceleprise whether complete diversity is present even though Alethea plainly did not have information about the citizenship of Acceleprise's limited partners. (*See id*. (memorializing the phone call).)  I again confirmed that diversity does not exist, and I informed Mr. Cohen that the reason Acceleprise did not file in federal court in the first place is because of that lack of diversity.

23. Receiving no response, on April 1, 2025, I sent an email to Mr. Cohen following up on our March 28 phone call to again reiterate that Alethea's refusal to withdraw its improper notice of removal filing is without basis and that my firm was preparing to file a motion to remand that would include a request for attorneys' fees given the efforts made to resolve the issue. (*Id.*)

24. On April 2, 2025, Mr. Cohen sent an email to me stating, "At present, I am not authorized to stipulate to a remand from Federal Court back to NY State."  A true and correct copy of that email is attached hereto as **Exhibit E**.  I have not received any further communication from Alethea or its counsel.

As a result of Alethea's improper notice of removal, Acceleprise has been forced to incur at least $25,978.00 in attorneys' fees as of the date of this filing, which reflects 31.8 attorney billable hours.

[Signature page follows]

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed on April 9, 2025
New York, NY

/s/ *Douglas S. Curran*
Douglas S. Curran