**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ACCELEPRISE ACCELERATOR FUND III, L.P., a
Delaware Limited Partnership,

<em>Plaintiff</em>,

v.

ALETHEA TECH PTE LTD, a Singapore Private
Limited Company,

<em>Defendant</em>.

Case No. 1:25-cv-02066

---

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS**
**MOTION TO REMAND AND FOR REIMBURSEMENT OF**
**<u>REASONABLE ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1447(c)</u>**

**ANDERSON KILL P.C.**
7 Times Square, 15th Floor
New York, NY 10036

*Attorneys for Plaintiff Acceleprise*
*Accelerator Fund III, L.P.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT .................................................................................................... 3

I.    ACCELEPRISE IS ENTITLED TO RECOVER ITS FEES BECAUSE
ALETHEA'S NOTICE OF REMOVAL WAS OBJECTIVELY
UNREASONABLE .................................................................................. 3

      A.    Alethea's Failure to Allege Diversity in Its Notice of Removal Was
Objectively Unreasonable ........................................................... 3

      B.    Alethea's Failure to Conduct an Investigation Before Filing Its Notice of
Removal Was Objectively Unreasonable ....................................... 5

      C.    Alethea's Authorities Are Inapposite .............................................. 7

II.    ALETHEA CANNOT AVOID ACCOUNTABILITY BY CLAIMING
ACCELEPRISE SHOULD HAVE BEEN EVEN MORE FORTHCOMING ................... 9

CONCLUSION .............................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACC Health, LLC v. Lost Creek Holdings, LLC,*
  2017 WL 3530380 (D.N.M. Aug. 16, 2017) .......................................................6, 7

*Agapov v. Negodaeva,*
  93 F. Supp. 2d 481 (S.D.N.Y. 2000)..................................................................3

*Brice v. Costco Wholesale Corporation,*
  2024 WL 2783895 (S.D.N.Y. May 28, 2024). .......................................................7

*Cats Co. v. TIG Ins. Co.,*
  2001 WL 747283 (S.D.N.Y. July 3, 2001) .............................................................3

*Coleman v. Selene Fin., LP,*
  2023 WL 9232950 (E.D.N.Y. Dec. 5, 2023) ...........................................................3

*Donovan v. Barrero Aguero,*
  2022 WL 3588008 (E.D.N.Y. Aug. 1, 2022) ..........................................................3

*Hale v. M.J.J.K., LLC,*
  2013 WL 6287823 (E.D. La. Dec. 4, 2013)............................................................3

*Health Care Navigator, LLC v. Quintairos, Prieto, Wood & Boyer, P.A.,*
  2022 WL 16949924 (S.D.N.Y. Nov. 15, 2022)....................................................7, 8

*Innovative Inflatables, LLC v. Ally Bank,*
  602 F. Supp. 3d 315 (D. Conn. 2022)...................................................................8

*JS Barkats PLLC v. Blue Sphere Corp.,*
  2017 WL 2930935 (S.D.N.Y. July 10, 2017). ........................................................8

*Lamassu Holdings, L.L.C. v. Thompson,*
  2012 WL 13396106 (S.D.N.Y. Oct. 10, 2012). ......................................................8

*Little Rest Twelve, Inc. v. Visan,*
  829 F. Supp. 2d 242 (S.D.N.Y. 2011).....................................................................7

*May v. Syracuse University,*
  2024 WL 4456987 (N.D.N.Y. Oct. 10, 2024). .......................................................8

*Parks Heritage Federal Credit Union v. Fiserv Solutions, Inc.,*
  2017 WL 74280 (S.D.N.Y. Jan. 4, 2017) ...............................................................7

## <u>TABLE OF AUTHORITIES</u>
*(continued)*

**Page(s)**

**Statutes**

28 U.S.C. § 1332.................................................................................................4, 5, 6, 7

28 U.S.C. § 1334.....................................................................................................7, 8

28 U.S.C. § 1447....................................................................................................1, 3, 9

**Federal Rules**

Fed. R. Civ. P. 11....................................................................................................1, 5, 9

Acceleprise respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Remand and for the Reimbursement of Reasonable Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c).

## PRELIMINARY STATEMENT

Alethea concedes its basic mistake: it filed a Notice of Removal without having conducted the barest investigation into whether diversity jurisdiction exists—and, for its own unknown strategic reasons, it refused to back down when confronted with that error and given repeated opportunities to correct it. Alethea's conduct entitles Acceleprise to reimbursement of the attorneys' fees it has been forced to incur in responding to Alethea's filing. This is especially so now that Alethea consents to remand the case to New York Supreme, thereby admitting that it never should have been removed to this Court in the first place.

In its opposition (ECF 12, "Opposition"), Alethea makes a number of inaccurate statements in support of its effort to shift the burden of *disproving* diversity jurisdiction to Acceleprise, which is contrary to Alethea's obligations under § 1446(a) and Rule 11. A litigant cannot file in federal court without a good-faith basis and then demand that its opponent disprove its allegations. And equally problematically, Alethea did not even adequately *allege* diversity jurisdiction in its removal notice. Blackletter law requires a party invoking federal diversity jurisdiction against a partnership to address the citizenship of its opponent's partners. Alethea failed to satisfy that basic requirement, having included allegations only about Acceleprise's manager (which has nothing to do with diversity), not its partners.

But rather than immediately litigating, Acceleprise sought to resolve the dispute out of court. It pointed out Alethea's mistake and afforded Alethea repeated opportunities to remedy the error. Acceleprise conferred several times by telephone and email, volunteered information, and supplemented that information when Alethea (wrongly) claimed the initial information was

inadequate. But even with business records, several written attorney representations, and a sworn declaration, Alethea refused to withdraw its filing.

Alethea now argues that it acted reasonably in the circumstances because Acceleprise did not include allegations in its New York Supreme Court complaint regarding the citizenship of its partners, even though such allegations are irrelevant to that lawsuit. It also faults Acceleprise for purportedly not providing sufficiently precise information to Alethea **after** Alethea had wrongfully filed its removal notice, even though Acceleprise was not obligated to provide any information at all, and the information it did provide was far more than sufficient to show that no diversity exists. Indeed, every bit of information that Acceleprise has provided to the Court— which has now prompted Alethea to consent to remand—Acceleprise also provided to Alethea. Alethea's claims to the contrary are not true.

Alethea further argues that it should escape liability for its litigation conduct because Acceleprise supplemented its sworn declaration in this Court with an additional paragraph, as compared to the declaration that it voluntarily provided to Alethea weeks earlier. But that argument fails for at least two reasons: (i) Acceleprise had already provided to Alethea and its counsel the **exact** information in that sworn declaration, and (ii) the additional paragraph in question is supplemental in nature. It is not necessary to defeat diversity, since Acceleprise had already provided business records and a sworn declaration conveying that the Canadian citizen was a partner when Acceleprise filed its complaint and when Alethea wrongfully removed.

Alethea's Notice of Removal was objectively unreasonable when it was filed, and it remains so today. Alethea refused to correct its errors, even when given repeated opportunities to do so, and it now makes a series of incorrect statements to this Court, including improper ad hominem assertions, in an effort to avoid reimbursing Acceleprise for the expenses it has

incurred in responding. Section 1447(c) provides for fee-shifting in exactly these circumstances. The Court should grant Acceleprise's motion.[1]

## ARGUMENT

## I.    ACCELEPRISE IS ENTITLED TO RECOVER ITS FEES BECAUSE ALETHEA'S NOTICE OF REMOVAL WAS OBJECTIVELY UNREASONABLE

Alethea filed its Notice of Removal without having carried out any jurisdictional investigation and without including a single allegation regarding the citizenship of Acceleprise's partners. Alethea nevertheless maintains its removal was proper because (i) Acceleprise's New York Supreme Court complaint did not allege the citizenship of each of its partners, and (ii) the citizenship of Acceleprise's partners was not publicly available. (Opp. 4.) Alethea is wrong.

### A.    Alethea's Failure to Allege Diversity in Its Notice of Removal Was Objectively Unreasonable

As the removing party, Alethea bears the burden of demonstrating in its Notice of Removal the existence of complete diversity, including the citizenship of every partner in Acceleprise's limited partnership. *See e.g., Coleman v. Selene Fin., LP*, 2023 WL 9232950, at *5 (E.D.N.Y. Dec. 5, 2023) (remanding where removing party failed to "provide the names of [the] general and limited partners, let alone the citizenships thereof"); *Donovan v. Barrero Aguero*, 2022 WL 3588008, at *2 (E.D.N.Y. Aug. 1, 2022) (finding removal notice "is clearly deficient with respect to diversity of the parties" when the defendant failed to "specifically allege" the "identity and citizenship of each member or partner"); *Cats Co. v. TIG Ins. Co.*, 2001 WL 747283 (S.D.N.Y. July 3, 2001) (remanding where removal notice failed to allege the citizenship of each of plaintiff's partners); *Agapov v. Negodaeva*, 93 F. Supp. 2d 481 (S.D.N.Y. 2000)

---

[1] Acceleprise has incurred additional fees since it submitted its motion on April 9, 2025, including in preparing this Reply. In the event the Court grants Acceleprise's motion, Acceleprise requests that the Court direct the parties to confer in good faith regarding a final calculation of those fees. (*See* Supplemental Declaration of Douglas S. Curran, submitted contemporaneously herewith, ¶¶ 2–7.)

("When a defendant seeks to remove an action from state court to federal court, she bears the burden of proving that federal subject matter jurisdiction exists.").

Alethea appears to concede this obligation, (Opp. 10–11), but it fails to explain how it has satisfied it. Despite acknowledging in its Notice of Removal that "a partnership takes the citizenship of all of its partners," (ECF 1, ¶ 20), Alethea does not allege a single fact, even upon information and belief, concerning the citizenship of Acceleprise's individual partners. (*See id.* ¶¶ 16–26.) The removal notice instead focuses on the citizenship of Acceleprise's manager, which has nothing to do with Acceleprise's citizenship. (*See id.* ¶ 21 ("At all times relevant to the Action, Plaintiff's management company was and remains an entity that is located in and does business in the State of New York.").)

Alethea repeats that mistake in its Opposition, arguing at length that it "reasonably" satisfied its obligation to plead diversity because it addressed the citizenship of Acceleprise's manager, and purportedly showed that it was diverse from Alethea. (*E.g.*, Opp. 10 ("Alethea supported its assertions based on Acceleprise's own Complaint, alleging that 'Plaintiff's management company was and remains an entity that is located in and does business in the State of New York[]' and 'Defendant Alethea's principal place of business is located in . . . Singapore' and therefore, there is complete diversity as between citizens of different states."); *id.* 4 (similar).) But alleging diversity between an LP's manager and the defendant has no bearing on whether removal is proper under § 1446 or whether this Court has jurisdiction under § 1332. The fact that Acceleprise's state-court complaint did not include allegations regarding the citizenship of its partners—when it had no reason to do so—does not somehow change the diversity requirements of § 1332.

Alethea's removal cannot have been objectively reasonable when Alethea did not even attempt to satisfy its pleading obligation.

**B.    Alethea's Failure to Conduct an Investigation Before Filing Its Notice of Removal Was Objectively Unreasonable**

Alethea contends that its pleading failures should be overlooked because it purportedly did not have access to any jurisdictional facts. (Opp. 4, 14.) On that basis, it concludes that its "investigation"—which was limited to reading the complaint—was reasonable. (*Id.*) But that is not how subject-matter jurisdiction works. A party is not relieved of its inquiry and pleading obligations because it does not possess information that satisfies those obligations. Nor can a party, in the absence of jurisdictionally relevant information, instead rely on other, irrelevant information—like the citizenship of the opposing party's manager.

Alethea has not identified any efforts it actually undertook to determine the citizenship of Acceleprise's partners prior to removing. As Alethea acknowledges, Rule 11 requires an investigation that is "reasonable in the circumstances." (Opp. 13–14.) In this case, counsel for the parties had been in contact about the dispute for several months by the time Alethea filed its erroneous Notice of Removal. (Acceleprise's Moving Brief ("Br."), ECF 6, at 4.) There is no reason Alethea's counsel did not inquire about diversity first—especially in the complete absence of any other information about Acceleprise's partners—rather than springing removal on Acceleprise for whatever perceived strategic advantage it sought to secure.[2]

---

[2] Alethea maintains that it was not obligated to confer with Acceleprise prior to filing—even though it concededly had no jurisdictional information at hand—because, if Alethea disclosed its plans to remove, Acceleprise "could simply destroy diversity prior to removal." (Opp. 6 n.2.) Alethea claims such a disclosure would "encourage gamesmanship," but it does not cite any authority for the notion that a party should be able to invoke federal jurisdiction on an entirely speculative basis in order to protect its **own** favored litigation strategy.

Courts have awarded fees in similar circumstances, when the removing party had zero basis to believe that diversity existed—even when jurisdictional information was not publicly available. For instance, the defendants in *ACC Health, LLC v. Lost Creek Holdings, LLC* filed a removal notice on the conclusory grounds that "there is complete diversity." 2017 WL 3530380, at *1 (D.N.M. Aug. 16, 2017). The court rejected the removal, ruling the defendants "failed to allege the facts of citizenship necessary to sustain diversity jurisdiction"—namely, the citizenship of each of the LLC's members. *Id.* In seeking to amend the removal notice, defendants' counsel wrote to plaintiffs' counsel demanding information regarding the members' citizenship because that information "was not publicly available." *Id.* at *2. Plaintiffs' counsel conveyed by telephone that one of the members was an Ohio citizen, such that complete diversity was lacking because certain defendants were also Ohio citizens. *Id.* Defendants nevertheless did not withdraw their removal notice, and Plaintiffs filed a motion to remand and to recover attorneys' fees. *Id.*

The court remanded and granted fees, ruling defendants did not possess an objectively reasonable basis to believe at the time of removal that diversity existed—even though that information was not publicly available. *Id.* at *3. The court ruled, "Defendants have provided the Court with no evidence to show that **prior to removal**, they identified the members of every LLC and **made an effort** to determine the citizenship of each [], as is required when determining whether LLCs are diverse." *Id.* (emphasis added.) The court further found that defendants' post hoc demand to plaintiffs for information regarding members' citizenship was not proper because the removing party bears the burden of ensuring the court "has subject matter jurisdiction **before** filing a notice of removal." *Id.* (emphasis added.)

Here, Alethea's jurisdictional allegations are similarly conclusory, Alethea likewise failed to allege the citizenship of each Acceleprise partner, and it likewise failed to "ma[k]e an effort to determine the citizenship of each" prior to removing. And, for its part, Acceleprise provided substantially more information—orally, in writing, and under oath—to Alethea than did the plaintiff in *ACC Health*. But Alethea still refused to remand. Alethea's objectively unreasonable conduct both before and after the wrongful removal warrants an award of fees.

### C.    Alethea's Authorities Are Inapposite

Alethea cites a host of cases in an effort to show that its removal was objectively reasonable, even though it did not include a single allegation regarding the citizenship of Acceleprise's partners and it conducted no investigation prior to filing. (Opp. 10–14.) All are readily distinguishable and none justifies Alethea's litigation conduct.

For instance, *Parks Heritage Federal Credit Union v. Fiserv Solutions, Inc.* does not involve either a limited partnership or an LLC, but rather a federal credit union. 2017 WL 74280 (S.D.N.Y. Jan. 4, 2017). The court found allegations regarding diversity to be reasonable, even though mistaken, given the unique jurisdictional treatment of credit unions. *Id.* at *4. Alethea, by contrast, did not even include any allegations concerning the citizenship of Acceleprise's partners. *Brice v. Costco Wholesale Corporation* likewise did not involve either a limited partnership or an LLC. 2024 WL 2783895, at *7 (S.D.N.Y. May 28, 2024). Instead, the *Brice* court considered the issue of whether defendants had presented a colorable, though mistaken, legal argument concerning a court's ability to evaluate the factual accuracy of plaintiff's allegations. *Id.* That has nothing to do with this case.

Alethea's remaining cases fare no better. Removal in *Little Rest Twelve, Inc. v. Visan* was based on 28 U.S.C. § 1334(b), not § 1332. 829 F. Supp. 3d 242 (S.D.N.Y. 2011). That court even stated, "[A] remand based on abstention is not equivalent to a remand for lack of jurisdiction."

*Id.* at 245. The court declined to award fees only because it did not have jurisdiction pursuant to § 1334(b). *Id.* In *Health Care Navigator, LLC v. Quintairos, Prieto, Wood & Boyer, P.A.*, the defendant had a longstanding relationship with plaintiffs and had a fact-based, albeit mistaken, understanding about the citizenship of the nondiverse individuals in question. 2022 WL 16949924, at *5 (S.D.N.Y. Nov. 15, 2022). The court afforded substantial weight to that relationship in declining to award fees. *Id.* No such relationship exists here.

In *JS Barkats PLLC v. Blue Sphere Corp.*, the court held that the defendant had an objectively reasonable basis to remove because plaintiff's complaint failed to allege that the plaintiff was an LLC. 2017 WL 2930935, at *5 (S.D.N.Y. July 10, 2017). The defendant therefore could not have known that any LLC members even existed. Not so here: Acceleprise's complaint alleges—and Alethea concededly knew—that Acceleprise is a limited partnership, such that Alethea's pleading failure is not excusable.

The court in *Innovative Inflatables, LLC v. Ally Bank* found that defendants' refusal to consent to remand was not objectively unreasonable because of a certain ambiguity regarding the amount in controversy; the case had nothing to do with the citizenship of the LLC members. 602 F. Supp. 3d 315 (D. Conn. 2022). And in *Lamassu Holdings, L.L.C. v. Thompson*, the court declined to award fees but, unlike here, the plaintiff there did not voluntarily provide **any** jurisdictional information prior to moving to remand, let alone substantial information akin to that provided by Acceleprise. 2012 WL 13396106 (S.D.N.Y. Oct. 10, 2012). Finally, the court did not award fees in *May v. Syracuse University* because the plaintiff amended its complaint after removal to change a party's alleged citizenship. 2024 WL 4456987 (N.D.N.Y. Oct. 10, 2024). That did not happen here.

None of these cases have any bearing on circumstances like here, where (i) the defendant wrongfully removed without evidence supporting its conclusory jurisdictional allegations, (ii) the defendant included zero allegations regarding the citizenship of the plaintiff's partners, (iii) the plaintiff nevertheless volunteered jurisdictional information to avoid needless motion practice, and (iv) the defendant still refused to withdraw its removal notice. In these circumstances, attorneys' fees are warranted.

## II.    ALETHEA CANNOT AVOID ACCOUNTABILITY BY CLAIMING ACCELEPRISE SHOULD HAVE BEEN EVEN MORE FORTHCOMING

Alethea asserts that Acceleprise is not entitled to attorneys' fees "based on its own evasive conduct in providing Alethea repeatedly inadequate proof of the existence of the Canadian LP." (Opp. 15.) This argument is not credible. To start with, Acceleprise was under no obligation **at all** to provide Alethea with **any** information concerning the citizenship of its partners after Alethea removed without an objectively reasonable basis. The fact that Acceleprise nevertheless provided information with the hope of avoiding needless litigation did not imbue Alethea with the right to dictate the nature and content of that information. Alethea cannot sincerely complain that Acceleprise was "evasive" and "begrudging" when Acceleprise, with no obligation to do so, was providing Alethea assistance in remedying Alethea's own violation of § 1447(c) and Rule 11.

Moreover, Alethea now claims that "had Acceleprise provided this information"— referring to Mr. Wheeler's April 9 Declaration (ECF 8)—"on March 28th, Alethea would have voluntarily remanded this case to New York state court and there would have been no need for it to file the instant Motion." (Opp. 8, 15.) But in making this argument, Alethea concedes that its refusal to withdraw the Notice of Removal was improper, as Acceleprise **did** provide the information Alethea now admits is sufficient.

9

First, the key paragraph in Mr. Wheeler's April 9 Declaration that Alethea claims Acceleprise provided only in connection with its filing in this Court states:

> 4.  That Canadian partner [1] was a limited partner at the time Acceleprise filed its lawsuit in New York state court in August 2024, [2] at the time defendant Alethea Tech Pte Ltd filed its Notice of [Removal] in this action in March 2025, and [3] at the time I submit this declaration in April 2025.

(ECF 8 ¶ 4.) Acceleprise provided that **<u>identical</u>** information to Alethea by email on March 28. Acceleprise's counsel wrote:

> [A]s counsel of record, I can again confirm, this time in writing, that the foreign LP in question [1] was an LP at the time we filed the complaint, [2] at the time your client wrongly removed, and [3] still today.

(ECF 7-4 at 2; Curran Decl., ECF 7, ¶ 21.) Alethea's claim that Acceleprise somehow withheld this information is deliberately untrue. Moreover, Acceleprise sent the above email in response to Alethea's request for "proof **or sufficient acknowledgment**" of those facts. (ECF 7-4 at PDF p. 3 (emphasis added).) At the time, even Alethea did not insist that the "acknowledgment" take the form of a sworn declaration—nor did it have any right to. Its insistence on that now is a baseless post hoc litigation position.

Similarly without merit are Alethea's assertions that the business-record spreadsheet showing the Canadian limited partner was not "sufficient." (Opp. 15.) Acceleprise provided the spreadsheet after a telephone call in which it explained to Alethea's counsel that one of Acceleprise's partners was a Canadian citizen, such that diversity did not exist. (Curran Decl. ¶¶ 9–11.) It then sent a spreadsheet with the file name "Forum - Acceleprise Accelerator Fund III - LP List (Redacted).pdf," which plainly stated that the file contained a list of Acceleprise's limited partners, and the face of the document states that it was accurate "as of" August 23, 2024—i.e., the date Acceleprise filed its New York Supreme complaint. (ECF 7-2 at PDF p. 2,

4.) It is spurious for Alethea to now claim that it "reasonably" suspected the list may have for some reason pertained to a different limited partnership—a claim it can make only by disregarding the context in which it was provided. (*See* Opp. 15.)

The March 25 Wheeler Declaration further demonstrated the lack of diversity. (*See* Br. 5–8.) As a supplement to the spreadsheet, that declaration stated that as of the date it was executed, "One of [Acceleprise's] limited partners **is** an individual who is a Canadian citizen." (ECF 7-3 at PDF p. 4 (emphasis added).) Together, those documents establish that the Canadian LP was a partner when the complaint was filed in August 2024, when Alethea wrongfully removed in March 2025, and still when the March 25 declaration was executed. (*See* Br. 5–8.)

Nevertheless, Alethea incredibly argues that it was entitled to disregard these documents because, it declares, Acceleprise's business records are "inaccurate" and "disorganized." (Opp. 7.) As support for this claim, Alethea states only, "In just two weeks, Acceleprise went from declaring under oath that one entity is its manager in the March 25th Declaration, while naming another entity as its manager in the April 9th Declaration filed with this Court." (Opp. 7.) This argument is utterly frivolous, and it betrays Alethea's own failure to sufficiently review Acceleprise's filings.

As of early April 2025, Acceleprise's management company changed from one affiliate to another as part of a business reorganization. (Curran Decl. ¶ 13 & n.1.) As Acceleprise explained in its opening papers:

> Forum Ventures, LLC continues to be an affiliate of Acceleprise, but the management structure changed for business reasons in April 2025. Acceleprise's current manager is Forum Ventures Management, LLC.

(*Id.*) That change took place **after** Mr. Wheeler's March 25 Declaration, but **before** he executed his April 9 Declaration, which explains the difference in those documents. There is nothing

"inaccurate" or "disorganized" about that—to the contrary, conveying the updated information highlights the care and specificity that is characteristic of Acceleprise's corporate approach, which stands in marked contrast to the imprecision of both Alethea's Notice of Removal and its Opposition.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Acceleprise's motion, remand the lawsuit, and award Acceleprise its reasonable attorneys' fees.

Dated:   April 30, 2025
         New York, New York

Respectfully submitted,

**ANDERSON KILL P.C.**

By: */s/ Douglas S. Curran*

    Douglas S. Curran, Esq.
    Joshua A. Zelen, Esq.
    7 Times Square, 15th Floor
    New York, NY 10036
    Tel: (212) 278-1000
    Fax: (212) 278-1733
    dcurran@andersonkill.com
    jzelen@andersonkill.com

    *Attorneys for Plaintiff Acceleprise*
    *Accelerator Fund III, L.P.*

## <u>WORD COUNT CERTIFICATION</u>

Plaintiff's foregoing Memorandum of Law contains 3,496 words (including the text, headings, footnotes, and quotations, but excluding the table of contents, table of authorities, case caption, signature block, and certificate of service) and therefore complies with the 3,500-word limit set forth in Local Rule 7.1(c) and Judge Marreo's Individual Rule II.D.

Dated:    April 30, 2025                    Respectfully submitted,
          New York, New York

                                           **ANDERSON KILL P.C.**

                                           By:  */s/ Douglas S. Curran*

                                                Douglas S. Curran, Esq.
                                                Joshua A. Zelen, Esq.
                                                7 Times Square, 15th Floor
                                                New York, NY 10036
                                                Tel: (212) 278-1000
                                                Fax: (212) 278-1733
                                                dcurran@andersonkill.com
                                                jzelen@andersonkill.com

                                                *Attorneys for Plaintiff Acceleprise*
                                                *Accelerator Fund III, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I, Douglas S. Curran, Esq., do hereby certify that I caused a true and correct copy of the foregoing Plaintiff's Reply Memorandum in Further Support of Its Motion to Remand and for Reimbursement of Reasonable Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c) to be filed with the Court on the date set forth below and served upon all counsel of record by means of the Court's electronic filing system, including the below counsel for defendant:

Barry L. Cohen, Esq.
Royer Cooper Cohen Braunfeld LLC
Three Logan Square
1717 Arch Street, 47th Floor
Philadelphia, PA 19103
Email: bcohen@rccblaw.com

Dated:    April 30, 2025          Respectfully submitted,
          New York, New York

**ANDERSON KILL P.C.**

By:  */s/ Douglas S. Curran*

Douglas S. Curran, Esq.
Joshua A. Zelen, Esq.
7 Times Square, 15th Floor
New York, NY 10036
Tel: (212) 278-1000
Fax: (212) 278-1733
dcurran@andersonkill.com
jzelen@andersonkill.com

*Attorneys for Plaintiff Acceleprise*
*Accelerator Fund III, L.P.*

14